May Term,
1858.

SMITH v. THE STATE.

SMITH
v.
THE STATE.

Upon an indictment for larceny, evidence is not admissible to show that the defendant has a general disposition to commit that offense; nor that he had been guilty of a similar offense; much less that he had been guilty of a felony of a different character.

Where an attempt has been made, by exciting the fears of a prisoner, to procure him to make confessions, and there is reason to presume that the attempt had that effect, evidence of his confessions is inadmissible.

*Monday,*
*May 24.*

APPEAL from the Cass Circuit Court.

HANNA, J.—The defendant was indicted, tried and convicted of larceny. Exceptions were taken at the trial to the admission of evidence upon two points; first, upon the question of character, and, second, upon the reception of confessions.

Before the close of the evidence in behalf of the state, the defendant asked one of the witnesses for the state, "if he had ever heard of any charge against him, defendant, before the present one"—to which he answered that he never had heard him charged with any offense before the present case. This witness also gave testimony tending to prove the general good character of the defendant, as well as evidence "that he had trusted him with his team, money," &c. This evidence, other than of general character, was not objected to.

The state then called another witness and asked him to state what he knew "of the defendant having been charged with feloniously passing counterfeit money." The evidence was objected to, but the Court permitted the witness to testify that he heard that the defendant was arrested for passing counterfeit money in *Lafayette.*

The examination, referred to as a cross-examination, having been really an examination in chief, by the defendant, upon the question of character, might have been objected to at the time it was made, the whole of it for being out of place at that time, and a part of it for its impropriety. Not having been objected to, the state had a right to cross-examine upon the general question, and also as to the grounds of the witness's belief, and as to particular facts,

and might bring evidence in contradiction, to impeach the general character of the defendant. 2 Stark. Ev. 366.— 3 Greenl. Ev. §§ 25, 26.—Burrill on Circumst. Ev. 533.— Whart. Amer. Crim. Law, 294.

But it is not allowable to show, in a case similar to the one at bar, that the defendant has a general disposition to commit the same kind of offense (15 New Hamp. R. 169. —Whart. *supra*, 295); nor that he had been guilty of a similar offense (*Id.* 295.—*McIntire* v. *The State*, decided at the last term of this Court (1).—*Walker* v. *Com.*, 1 Leigh, 574); much less that he had been guilty of a distinct felony of a different character. Nor was the foundation laid for the introduction of such evidence, by the prosecutor standing by and without objection permitting improper questions to be asked, and irrelevant answers elicited. Even the record of the charge in *Lafayette* would not have been competent evidence on the trial in this case, nor the evidence of one who saw him arrested upon it, much less that of one who testified to what he had heard in regard to such arrest.

The state offered to prove the confessions of the defendant, and thereupon the witness, *Sutherland*, was questioned as to the circumstances under which such confessions were made, and stated that, " soon after he was arrested I told him that I knew him and his people, and that if he would confess to me all he knew about the matter, referring to the mare, I would assist him in getting clear; but if he would not so confess, I would pursue him to the extent of the law, and put him through." Again, the witness said, " we were with him as much as a half an hour, with a view of working upon his fears by such threats as above stated, and also working upon his hopes, as above stated, in order to influence him to make a confession concerning the taking of the mare. I told him I asked no boot of him—that I could put him through." Again, " the prisoner seemed much affected, and shed tears."

Another witness was introduced, who accompanied *Sutherland* in attempting to obtain a confession, and who corroborated his evidence as to the statements that were made

to the defendant by *Sutherland,* and also, that witness "said to the prisoner that *Sutherland* would do what he said, and that he had better confess.  *  *  *  . We did all we could to get him to confess, so that *Sutherland* could get his mare."

Evidence was received of confessions thus elicited.

In the absence of a statute upon the subject, the rules of evidence would not have permitted admissions, or confessions, thus obtained by the prosecuting witness, to be given in evidence. 2 Stark. Ev. 39.—Whart. Am. Crim. Law, 316.—1 Greenl. Ev. §§ 219 to 222.

Our statute upon the subject is as follows:

" The confession of a defendant made under inducement, with all the circumstances, may be given in evidence against him, except when made under the influence of fear produced by threats," &c.  2 R. S. p. 373.

It would be almost impossible to determine whether a person was laboring under the influence of fear, so far as to compel or induce him to confess, from the use of the means detailed in evidence in this case, for the reason given by *Greenleaf,* vol. 1, p. 287.  He says:  " Language addressed by others, and sufficient to overcome the mind of one, may have no effect upon that of another."  One thing appears to be certain: the attempt was made by the prosecuting witness to excite the fears of the prisoner, and there is some reason to believe it had that effect, from his shedding tears; and it is equally certain that such attempts ought not to be countenanced in behalf of the state against a prisoner.  The evidence ought not to have been received.

*Per Curiam.*—The judgment is reversed.  Cause remanded, &c.

*H. P. Biddle* and *B. W. Peters,* for the appellant.

(1) *Ante,* 26.