### J. C. WILLIAMSON v. THE STATE.

No. 3312.   Decided May 13, 1914.

Rehearing denied June 10, 1914.

**1.—Theft—Suspended Sentence—General Reputation.**

Where, upon trial of theft, the defendant filed his application for suspended sentence in the event he was convicted, he thereby put his general reputation in issue, and where he testified besides, that his reputation for truth, veracity, honesty, etc., was good, there was no error in permitting the State to introduce testimony in rebuttal.

**2.—Same—Evidence—Moral Turpitude.**

Where, upon trial of felony theft, the defendant filed his application for a suspended sentence in the event of conviction, he thereby placed his reputa-

tion as a peaceable and law-abiding citizen in issue, and, upon cross-examination, there was no error in permitting witnesses to testify of acts and offenses of defendant which were not felonies and did not involve moral turpitude; however, such offenses which did not involve moral turpitude could not affect his credibility as a witness and should have been properly limited by the court's charge to the question of suspension of sentence, but no objection having been urged to the court's charge, which was erroneous in this behalf, before the same was read to the jury, the same can not be reversed thereon under article 743, Code Criminal Procedure.

**3.—Same—Motion for New Trial—Objections to Charge of Court.**

Since the amendment of article 743, Code Criminal Procedure, an objection to the court's charge can not be considered on appeal, unless the same was made at the time the court submitted his charge to counsel and before the same was read to the jury, and where the same is not complained of until after the verdict, it can not be reviewed on appeal.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robert B. Seay.

Appeal from a conviction of theft; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Nelms & Puckitt,* for appellant.—On question of admitting testimony of other offenses affecting defendant's reputation: Ware v. State, 36 Texas Crim. Rep., 597; Thompson v. State, 38 id., 335; Goad v. State, 52 Texas Crim. Rep., 444; Hightower v. State, 53 id., 486; Holland v. State, 60 Texas Crim. Rep., 117, 131 S. W. Rep., 563.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of theft, and his punishment assessed at five years confinement in the State penitentiary.

All the witnesses agree that appellant, J. B. Conine and George McCully met in a saloon in Dallas, and then took an automobile drive in an automobile belonging to Conine, going to the "Pass Time Club," but from this time on is where the conflict occurs. Conine says that when they got to the Pass Time Club, one of them said: "You are not a member of the club and can not go in, give us a little change and we will go in and get the beer"; that he took out his pocket book to do so and the bills being on top, he took them out to get the change, and as he did so, appellant grabbed the bills and ran—that there were ten $10 bills, amounting to one hundred dollars, that appellant took from him on that occasion.

Appellant admits riding to the Pass Time Club, but says when he got there, he got out and got on the street car and went to his home. That Conine had not taken out any money when he left, and he saw and took none of his money.

McCully says as soon as he got out he went in the Pass Time Club and did not see anyone get Conine's money, but in a few seconds he was told about Conine losing his money.

The State, to show flight, introduced evidence that the police were

informed and made search for appellant, but did not succeed in locating him for some months. The theft is alleged to have taken place on April 15th and appellant admits leaving Dallas, but says he did not do so until the 28th of April, going first to Denison, then to Denver, in search of work, and there went to work for the Union Pacific Railroad.

There are but two questions raised by the record and they both call for a construction of the Acts of the last Legislature. Appellant entered a plea requesting that in the event he was convicted that his sentence be suspended. When this plea is entered by any one on trial for a felony, section 2 of the suspended sentence Act (chap. 7, Acts Thirty-third Legislature, p. 8) provides that "the court shall permit testimony to be introduced as to the general reputation of the defendant to enable the jury to determine whether to recommend suspension of sentence," providing therein that if he has theretofore been convicted of a felony the sentence shall not be suspended. Unless a person on trial enters this plea, his reputation can not be put in issue by the State, unless he does so, but when he elects to avail himself of the privilege of filing this plea, then he puts his reputation in issue and any legitimate testimony bearing on that issue becomes admissible, and by filing this plea in this case, he opened the door for testimony bearing on his reputation. In addition to this, he introduced a number of witnesses who testified that his reputation for truth and veracity, for honesty, and as a peaceable, law-abiding citizen was good. On cross-examination of these witnesses, some of them admitted they had heard he was charged with robbing a box car. The State also introduced a number of witnesses who testified appellant's reputation as a peaceable, law-abiding citizen was bad. When appellant took the stand and testified, among other things, he said that while he had been charged with robbing the box car, he had not been indicted for that offense and had never been convicted of any felony. The State on cross-examination asked him if he had not been arrested as many as a dozen times, and he answered no, but admitted that he had been arrested three or four times and had been in the city jail two or three times. Appellant strenuously objected to the testimony that he had been arrested three or four times and had been in jail two or three times, saying that on these occasions he was charged with misdemeanors, not involving moral turpitude. As to the witnesses who testified to appellant's general reputation as a peaceable, law-abiding citizen, it was certainly permissible on cross-examination to ask them if they had not heard of appellant being charged with violations of the law, for it has always been held that a witness testifying to general good character may be so cross-examined to test the soundness of his opinion, to elicit data upon which it was founded, to determine whether or not such opinion is well founded. Forrester v. State, 38 Texas Crim. Rep., 245; Bearden v. State, 44 Texas Crim. Rep., 578. In Holloway v. State, 45 Texas Crim. Rep., 303, this court held: "Of course, it was not competent for the State to originally put appellant's reputation in issue, but he *having done so,* it was proper on cross-examination of his witnesses to prove

by them particular acts of misconduct; or where the proof was of general reputation on the part of appellant that the witnesses had heard of particular acts of misconduct," citing Rice Crim. Ev., p. 603. And this is not only the rule in this State, but it is so held in State v. Merriman, 34 S. C., 16; Ingram v. State, 67 Ala., 67; People v. Gordan, 103 Cal., 568; State v. Jerome, 33 Conn., 265; Cook v. State, 46 Fla., 20; Ozburn v. State, 87 Ga., 173; Smith v. State, 10 Ind., 106; State v. Arnold, 12 Iowa, 479; Newton v. Com., 102 S. W. Rep. (Ky.), 264; State v. Donelon, 45 La. Ann., 744; State v. Beckner, 194 Mo., 281, 91 S. W. Rep., 892; McCormick v. State, 66 Neb., 337; State v. Campbell, 20 Nev., 122; State v. Knapp, 45 N. H., 148; State v. Perkins, 66 N. C., 126; People v. McKane, 30 N. Y. Supp., 95; State v. Ogden, 39 Ore., 195; People v. Hite, 8 Utah, 461.

Appellant presents these cases wherein appellant does not put his reputation in issue, and only takes the stand as a witness and under such state of facts it has been correctly held that proof can only be made of offenses involving moral turpitude or of the grade of felony, to affect his credit. But when he puts his reputation in issue as a peaceable and law-abiding citizen, and he does this in this case specifically, and in addition thereto does so by filing a plea asking a suspension of sentence, then evidence which tends to show that he is not a peaceable law-abiding citizen may be adduced on cross-examination of his witnesses, and may be adduced even though such acts are not felonies or do not involve moral turpitude. And when he files a plea asking a suspension of sentence, this in and of itself puts in issue his reputation as a peaceable, law-abiding citizen, and any evidence which tends to show that he is not entitled to such reputation, is admissible in evidence. The fact that one has theretofore been convicted of a felony, bars him from availing himself of the plea, but the fact that he has not before that time been convicted of a felony, does not in and of itself entitle one to a suspension of sentence; it authorizes him to enter the plea, and if his reputation theretofore is shown to be such that the best interests and welfare of the State will not suffer by suspending the sentence, and is such that hope can be entertained of his reformation by extending this clemency, it may be done. But if his reputation, the life he has lived, is such there is but little or no hope of reformation without his being compelled to undergo punishment, and that the best interests of society demand his imprisonment, the punishment should not be suspended. This as we understand it is the object and purpose of the law, and when one elects to file this plea asking for clemency, if found guilty, the law puts in issue his past reputation, and evidence of the character of life he has lived in the past is admissible to enable the jury to determine whether or not the clemency should be extended, and the first bill presents no error.

However, while all the evidence objected to was admissible to enable the jury to determine whether or not they would suspend punishment for the offense committed in case they found him guilty, during good behavior, it was not admissible for the purpose of affecting the credit

of the defendant as a witness, for the offenses for which he had theretofore been arrested did not involve moral turpitude, and were not of the grade of a felony, except in one instance (that in which he was charged with robbing a railroad car), and in that case after investigation no indictment was returned, consequently this evidence adduced did not go to his credit as a witness (Wright v. State, 63 Texas Crim. Rep., 429), but was admissible as bearing on his reputation as a peaceable and law-abiding citizen on his plea of suspension of sentence. The charge of the court instructed the jury: "You are further instructed that there has been admitted before the jury evidence in regard to defendant having been arrested and charged with other offenses besides the one set out in the indictment in this case. You are instructed that defendant is not on trial for any other offense and can not be convicted therefor. Such evidence was admitted before you for the purpose of enabling you to pass upon the credibility of the defendant as a witness in his own behalf, and to aid you in deciding what weight you will give his testimony as a witness in this case, and if you consider such testimony at all it will only be for the purpose for which it was so admitted by the court." The first part of this charge wherein he instructed the jury that such testimony could not be considered in passing on the guilt or innocence of the defendant in the case then on trial, was a correct exposition of the law but the charge was erroneous in instructing the jury that such testimony might be considered in passing on the credibility of the defendant as a witness, the offenses not involving moral turpitude, and not being of the grade of felony. Instead, the jury should have been instructed that in case they found appellant guilty, it could only be considered in passing on whether or not they would recommend suspension of the sentence. The record discloses that the charge of the court was submitted to the appellant and his counsel before being read to the jury, and no objection was made thereto as given in any respect, but *after verdict* appellant does except to this paragraph of the charge, and this necessarily involves a construction of article 743 of the Code of Criminal Procedure as amended by the Acts of the Thirty-third Legislature (chap. 138, p. 278, Ses. Acts). It was provided in that Act that the charge before being read to the jury should be submitted to counsel and they must at that time present in writing any objections to the charge, distinctly specifying each ground of objection, and if no objection is made at that time, the case shall not be reversed because of errors in the charge, and if such objections are made we shall not reverse unless such errors were calculated to injure the rights of defendant, or unless it appears he has not had a fair and impartial trial. Prior to the enactment of that law, errors in the charge could be pointed out after verdict in the motion for new trial, and this statute was passed to remedy that matter, and require attorneys to point out the errors in the charge before it was submitted to the jury, instead of after verdict. Under the law as it was formerly written this court in an unbroken line of decisions held that unless the error in the charge was complained of in the motion for

new trial, we could not consider it unless fundamental error was presented.   Pena v. State, 38 Texas Crim. Rep., 333; Sue v. State, 52 Texas Crim. Rep., 122; Reyes v. State, 55 Texas Crim. Rep., 422; Manning v. State, 46 Texas Crim. Rep., 326, 81 S. W. Rep., 957; Bailey v. State, 45 S. W. Rep., 320; Barnett v. State, 42 Texas Crim. Rep., 302; McGee v. State, 43 S. W. Rep., 512; Spears v. State, 41 Texas Crim. Rep., 527.   Many other cases could be cited showing that article 743 (old Code 723) had received a settled construction prior to its amendment, 1913, and that is, unless the error in the charge was complained of in the motion for new trial, and if it was presented for the first time in this court, we would not be authorized to reverse the case.   With this construction before them the Legislature deliberately, in amending the article, struck out the words "or in motion for new trial" and required that all errors in the charge be objected to at the time of the trial and before the charge is read to the jury, requiring that the court submit his charge to counsel for that purpose.   And the question is, are we authorized to ignore this plain statutory provision of our law, because the court improperly instructed the jury they could consider the testimony for the purpose of affecting the credit of the defendant as a witness, when it was not admissible for that purpose, but for a wholly different purpose.   We do not think so.   If the law is wrong in thus providing, it is not for us to construe away, but application should be made to the body which enacted the law.   Because the error in the charge is not in any manner complained of until after verdict, we can not consider it under the present law any more than the court under the former law could if it had not been complained of in the motion for new trial, and it necessarily follows that the judgment must be affirmed, and it is accordingly so ordered.

*Affirmed.*

[Rehearing denied June 10, 1914.—Reporter.]